UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | **Case No.: 2:18-cv-00239** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **IN ADMIRALTY** |
| vs. | ) | |
| | ) | **COMPLAINT FOR DEFICIENCY ON** |
| JOHN FREITAS, SR.; CAROLYN FREITAS | ) | **PREFERRED SHIP MORTGAGE** |
| and NAZARY CABOZ, | ) | |
| *in personam,* | ) | **(46 U.S.C. § 31325(b)(2)(A))** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

CHAD A. READLER
Acting Assistant Attorney General
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
ERIC KAUFMAN-COHEN
Assistant Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice

Attorneys for Plaintiff United States of America

COMPLAINT FOR DEFICIENCY

The Complaint of the United States of America alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1.      This is a case within the admiralty and maritime jurisdiction of this Honorable Court, as hereinafter more fully appears, and the United States' claim is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2.      Plaintiff is the United States of America, a sovereign nation authorized to sue pursuant to 28 U.S.C. § 1345.

3.      The United States brings this action pursuant to 46 U.S.C. § 31325(b)(2)(A) in order to recover against defendants herein the deficiency that exists between the credit bid fund established after the judicial foreclosure sale of the F/V CAROL LINDA, Official Number 62497 ("the Vessel") and the Preferred Ship Mortgage the United States held on said vessel.

4.      Defendant John Freitas. Sr. is, as set forth more fully below, an individual guarantor of the Preferred Ship Mortgage the United States held on the Vessel, and has, by virtue of said guarantee, subjected himself to the jurisdiction of this Court.

5.      Carolyn Freitas is, as set forth more fully below, an individual guarantor of the Preferred Ship Mortgage the United States held on the Vessel, and has, by virtue of said guarantee, subjected herself to the jurisdiction of this Court.

6.      Defendant Nazary Caboz is, as set forth more fully below, an individual guarantor of the Preferred Ship Mortgage the United States held on the Vessel, and has, by virtue of said guarantee, subjected himself to the jurisdiction of this Court.

//

//

COMPLAINT FOR DEFICIENCY                          1

## THE UNITED STATES's PREFERRED SHIP MORTGAGE AND INDIVIDUAL
## GUARANTEE

7.      On or about November 25, 2009, Vasco Enterprises, Inc., a Corporation organized under the laws of the State of California ("Vasco"), was the owner of the Vessel.  Defendants herein were at all relevant times officers and directors of said corporation.  At the direction and on approval of defendants herein, acting in their capacities as officers and directors of the corporation, Vasco executed and delivered to the United States of America, acting by and through the Secretary of Commerce, National Oceanic and Atmospheric Administration, National Fisheries Service (the "Secretary") a promissory note in the amount of $3,000,000, bearing interest at 5.785% per year. (Attached hereto as Exhibit "A", and incorporated in its entirety as if fully set forth herein, is a true and correct copy of the fully executed promissory note.  Hereinafter "Carol Linda Promissory Note".)

8.      In conjunction with, and for the purposes of securing the payment of the principal, interest, fees and expenses due on the Carol Linda Promissory note, defendant Vasco, acting by and through defendants herein, duly executed and delivered to the Secretary a Preferred Ship Mortgage, as subsequently amended, supplemented, modified, restated, assumed, substituted for or endorsed, covering the entire Vessel, dated November 25, 2009. (Attached hereto as Exhibit "B", and incorporated in its entirety as if fully set forth herein, is a true and correct copy of the United States' First Preferred Ship Mortgage, hereinafter "Carol Linda Preferred Mortgage".)

9.      On or about November 25, 2009, in consideration of and as an inducement for the Secretary to enter into the transaction as reflected by the Carol Linda Promissory Note, defendants John Freitas, Sr., Carolyn Freitas and Nazary Caboz executed and delivered to the Secretary an unconditional guarantee, as subsequently amended, affirmed, supplemented, modified, restated,

COMPLAINT FOR DEFICIENCY                          2                          U.S. Department of Justice
                                                                              Torts Branch, Civil Division
                                                                          450 Golden Gate Avenue, P.O. Box 36028
                                                                              San Francisco, CA  94102
                                                                              (415) 436-6645

assumed, substituted for or endorsed (hereinafter "Guaranty Agreement"), of all obligations owed to the Secretary under the Carol Linda Promissory Note. (Attached hereto as Exhibit "C", and incorporated in its entirety as if fully set forth herein, is a true and correct copy of the Guaranty Agreement.)

### DEFAULT ON MORTGAGE AND SALE OF VESSEL

10.     In or about August, 2015, the Secretary became aware of the fact that a third party, WH Fisheries, Inc., had filed a complaint against the Vessel *in rem*, and Vasco, *in personam*, in the High Court of American Samoa, case No. 40-2015 ("Samoan Action"), to foreclose on a second mortgage it held on the Vessel.  In addition, WH Fisheries obtained an order for the arrest of the Vessel.

11.     Vasco had not provided the Secretary with notice of the arrest of the Vessel as required under the terms and conditions of the United States' Preferred Ship Mortgage. Such action constituted a default under the terms and provisions of the United States First Preferred Ship Mortgage.

12.     The Secretary notified defendant Vasco that it had defaulted under the terms and conditions of the Government's Preferred Ship Mortgage by way of letter dated August 20, 2015.

13.     In addition to notifying Vasco of its default under the terms and conditions of the Government's Preferred Ship Mortgage, the Secretary notified defendants John Freitas, Carolyn Freitas and Nazary Caboz as guarantors under the Guaranty Agreement of defendant Vasco's default under the terms and conditions of the Government's Preferred Ship Mortgage.

14.     Following the arrest of the Vessel, defendant Vasco stop making payments to the Secretary as required under the Carol Linda Promissory Note and the Government's First Preferred Ship Mortgage.

COMPLAINT FOR DEFICIENCY    3        U.S. Department of Justice

15.     By letter dated October 8, 2015, the Secretary notified Vasco that its failure to make payments under the Carol Linda Promissory Note and the Government's First Preferred Ship Mortgage constituted breaches of both documents.  As a result of said breaches Vasco was notified of its default under the Carol Linda Promissory Note and the Government's First Preferred Ship Mortgage, and demand was made for full payment of the remaining indebtedness of $2,460,587.46, including interest then owing. Vasco was also informed that interest on the total indebtedness would accrue on the principal balance at a rate of $1,213.44 per diem until fully paid.

16.     In addition to notifying Vasco of its default under the Carol Linda Promissory Note and the Government's First Preferred Ship Mortgage, the Secretary notified defendants herein of Vasco's defaults under the Carol Linda Promissory Note and the Government's First Preferred Ship Mortgage.

17.     Demand was made of defendants herein as guarantors under the Guaranty Agreement for full payment of the outstanding indebtedness under the Carol Linda Promissory Note and the Government's First Preferred Ship Mortgage of $2,460,587.46. (Attached hereto as Exhibit "D", and incorporated in its entirety as if fully set forth herein, are true and correct copies of the Secretary's notices of default to the Guarantors dated October 8, 2015.)

18.     In October, 2015, the United States filed a Complaint-in-Intervention in the Samoan Action seeking to foreclose on its First Preferred Ship Mortgage.

19.     On December 9, 2015, the Court in the Samoan Action issued an order for the interlocutory sale of the Vessel.  A public auction was held on February 16, 2016, and the United States purchased the Vessel for a credit bid of $2,500,000. The Court issued an order approving the sale on March 7, 2015.

U.S. Department of Justice
Torts Branch, Civil Division
450 Golden Gate Avenue, P.O. Box 36028
San Francisco, CA  94102
(415) 436-6645

20.     The Court in the Samoan Action maintains jurisdiction over the credit bid fund, and on August 26, 2016, the Court approved a payment from the credit bid fund to WH Fisheries of $293,145.75 to reimburse it for *custodial legis* expenses.  On May 26, 2016, the Court approved a payment from the credit bid fund to the United States of $33,297.52 for *custodial legis* expenses it incurred in insuring the Vessel during the time it was under arrest.

21.     In addition to the above *custodial legis* fees paid from the credit bid fund, an additional $19,000 was paid from the fund to settle a crewman's personal injury claim.

22.     The aforesaid *custodial legis* expenses and crewman's personal injury claim paid from the credit bid fund has reduced the fund, and the amount the United States may recover from the fund under its Preferred Ship Mortgage, presently is no more than to $2,154,556.80, said fund potentially being subject to further reduction.

23.     To date the amount of principal owed to the United States under its Preferred Ship Mortgage, and guaranteed by defendants herein under the Guarantee Agreement, is no less than $2,460,587.46.  In addition, interest incurred to date on the principal owing is $182,016.06. Accordingly, the total debt owed on to the United States under its Preferred Ship Mortgage is no less than $2,642,603.52.

24.     As stated above, the credit bid fund created after the sale of the Vessel currently stands at $2,154,556.  The total amount currently owed to the United States under its Preferred Ship Mortgage is no less than $2,642,603.52.  As such, there exists a deficiency of no less than $488,046.79 between what is owed to the United States under its Preferred Ship Mortgage and the funds available to pay the debt from the credit bid fund.  Interest on the deficiency amount of $488,046.19 to date totals $169,018.08.  As such the total deficiency existing between the amount of the credit bid fund and what is owed to the United States under its Preferred Ship Mortgage,

U.S. Department of Justice
Torts Branch, Civil Division
450 Golden Gate Avenue, P.O. Box 36028
San Francisco, CA  94102
(415) 436-6645

and guaranteed by defendants herein under the Guarantee Agreement, stands at no less than $657,064.87.

25.     During the pendency of the Samoan Action several alleged crewmembers intervened alleging they were owed past wages, which allegations are denied as a matter of fact and law. The total amount of claimed wages to date is $772,277.93. Should the crew wage claimants prevail in the Samoan Action they would be paid from the credit bid fund, thereby reducing the fund to no more than $1,382,278.90, and increasing the deficiency owed by defendants herein to the United States to no less than $1,429,342.80.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS**
**JOHN FREITAS, CAROLYN FREITAS AND NAZARY CABOZ,** *IN PERSONAM*
**THE UNITED STATES OF AMERICA ALLEGES ON INFORMATION AND BELIEF**
**AS FOLLOWS:**

26.     The United States refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

27.     The total deficiency existing between the amount of the credit bid fund and what is owed to the United States under its Preferred Ship Mortgage, and guaranteed by defendants herein under the Guarantee Agreement, stands at no less than $$657,064.87.

28.     Defendants herein are liable to the United States under the Guaranty Agreement for the total amount of said deficiency.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
**JOHN FREITAS, CAROLYN FREITAS AND NAZARY CABOZ,** *IN PERSONAM*
**THE UNITED STATES OF AMERICA ALLEGES ON INFORMATION AND BELIEF**
**AS FOLLOWS:**

29.     Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its amended complaint.

30.     On information and belief, defendants, and each of them, in breach of law, including, but not limited to, in violation of the provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq*., has, *inter alia*, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice the United States.

31.     Despite its liability to the United States, all as alleged in this complaint, defendants, and each of them, in breach of law, including, but not limited to, in violation of the provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, *et seq*., may hereafter transfer, sell, spin off, and assign, or attempt to transfer, sell, spin off, and assign assets so as to prejudice the United States.

32.     All such prior and future actions as alleged in the foregoing paragraphs have caused damages, and will cause damages, to the United States in an amount to be established according to proof at trial.

33.     The United States reserves the right to amend this Complaint to add other persons and entities in the event discovery evidences such persons or entities have violated provisions of this statute.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS JOHN FREITAS, CAROLYN FREITAS AND NAZARY CABOZ, *IN PERSONAM* THE UNITED STATES OF AMERICA ALLEGES ON INFORMATION AND BELIEF <u>AS FOLLOWS</u>:

34.     Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of its amended complaint.

35.     On information and belief, defendants, and each of them, in breach of law, including, but not limited to, in violation of the provisions of the Federal Debt Priority Statute, 31 U.S.C. § 3713, has, *inter alia*, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice the United States.

36.     To the extent that defendants, and/or their representatives, agents, fiduciaries, or other individuals and entities acting on their behalf or with their authorization, have discharged claims or debts to any other person or entity other than the United States, or in the future discharge claims or debts to any person or entity other than the United States in contravention of, *inter alia*, 31 U.S.C. § 3713, defendants and/or their representatives, agents, fiduciaries, or other individuals

COMPLAINT FOR DEFICIENCY                    7                    U.S. Department of Justice
Torts Branch, Civil Division
450 Golden Gate Avenue, P.O. Box 36028
San Francisco, CA  94102
(415) 436-6645

and entities acting on their behalf or with its authorization, are liable to the United States for the amount of any such payments.

37.     The United States reserves the right to amend this Complaint to add other persons and entities in the event discovery evidences such persons or entities have violated provisions of this statute.

WHEREFORE, the United States prays as follows:

1.     That, with respect to any amounts due and owing after the final distribution of proceeds of the credit bid fund, judgment be entered against defendant John Freitas, *in personam*, for any such deficiency in his capacity as guarantor of such sums due and owing under the Carol Linda Promissory Note and the Carol Linda Preferred Ship Mortgage;

2.      That, with respect to any amounts due and owing after distribution of proceeds of the vessel sale to the United States, judgment be entered against defendant Carolyn Freitas, *in personam*, for any such deficiency in her capacity as guarantor of such sums due and owing under the Carol Linda Promissory Note and the Carol Linda Preferred Ship Mortgage;

3.     That, with respect to any amounts due and owing after distribution of proceeds of the vessel sale to the United States, judgment be entered against defendant Nazary Caboz, *in personam*, for any such deficiency in her capacity as guarantor of such sums due and owing under the Carol Linda Promissory Note and the Carol Linda Preferred Ship Mortgage;

4.     That this Court enter judgment against defendants, and each of them, in favor of the United States in accordance with First, Second, and Third Causes of Action pled herein.

5.     For cost of suit herein; and

//

//

//

COMPLAINT FOR DEFICIENCY                    8                    U.S. Department of Justice
                                                                 Torts Branch, Civil Division
                                                      450 Golden Gate Avenue, P.O. Box 36028
                                                                  San Francisco, CA  94102
                                                                      (415) 436-6645

6.      That the United States be afforded such other and further relief as the Court may deem just and proper.

Dated: February 14, 2018.                    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office


/s/ Eric Kaufman-Cohen
ERIC KAUFMAN-COHEN
Assistant Attorney in Charge, West Coast Office
Torts Branch, Civil Division, Admiralty
U.S. Department of Justice

Attorneys for Plaintiff United States of America

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | JOHN FREITAS, CAROLYN FREITAS and NAZARY CABOZ, in personam |

| **(b)** County of Residence of First Listed Plaintiff | | County of Residence of First Listed Defendant |
|---|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Eric Kaufman-Cohen, USDOJ Civil Division, Torts Branch, 450 Golden Gate Ave., P.O. Box 36028 San Francisco, CA 94102 (415) 436-6647 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☒ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Exclude Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 371 Truth in Lending | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
46 U.S.C. Sec. 31325(b)(2)(A)

Brief description of cause:
Deficiency action on a personal guarantee agreement to recover monies owed under Preferred Ship Mortgage

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | **DEMAND $** 657,064.87 | CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE 2/14/18 | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

FF-C-030

## PROMISSORY NOTE TO THE UNITED STATES OF AMERICA

City and State: $\underline{San Diego, California}$
Date: November $\underline{25}$, 2009

FOR VALUE RECEIVED, **Vasco Enterprises, Incorporated**, the undersigned (the "Payor") promises to pay to the order of the UNITED STATES OF AMERICA, acting by and through the Secretary of Commerce, NOAA/NMFS (the "Payee"), the principal amount of THREE MILLION & NO/100 Dollars ($3,000,000.00) with interest on the unpaid principal computed from the date of funding at the rate of FIVE & 785/1000 percent (5.785%) per year, payments to be made in installments as follows:

Payments of $75,131.57 including principal and interest payable quarterly with the first payment due February $\underline{25}$, 2010 and each three months thereafter with the balance of principal and interest due in full November $\underline{25}$, 2024.

Payments in lawful money of the United States of America shall be made payable to the United States Department of Commerce/NOAA/NMFS, or as the Payee or other holder of this Note may from time-to-time designate in writing to Payor. Payments shall be applied first to accrued interest and the balance of the payment, if any, shall be applied to principal. Payor shall identify each payment by the designation FF-C-030 and shall mail each payment as follows:

U. S. Department of Commerce, NOAA
P. O. Box 979008
St. Louis, MO 63197-9000

Payor may prepay principal at any time, and from time to time, without penalty. However, the Payee or other holder of this Note may require that any partial prepayments be made on the date quarterly installments are due. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent quarterly installments or change the amount of such installments, unless the Payee or other holder of this Note shall otherwise agree in writing.

Payor acknowledges that late payment to Payee or other holder of this Note will cause Payee or such other holder to incur costs not contemplated by this indebtedness. Such costs include, without limitation, processing and accounting charges. Therefore, if any installment is not received by Payee or such other holder within fifteen (15) days of its due date, then, at the option of the Payee or other holder, Payor shall pay an additional sum of five percent (5%) of the overdue amount or one thousand dollars ($1,000.00), whichever is less, as a late charge. The parties agree that this late charge represents a reasonable sum considering all of the circumstances existing on the date of this agreement and

FF-C-030 

represents a fair and reasonable estimate of the costs that Payee or such other holder will incur by reason of late payment. The parties further agree that proof of actual damages would be costly or inconvenient. Acceptance of or the election not to assess any late charge shall not constitute a waiver of any default with respect to any overdue amount, and shall not prevent Payee or such other holder from exercising any of the other rights and remedies available to Payee or such other holder, including, but not limited to, Payee's option to declare all sums owing hereunder to be immediately due and payable and to accrue interest at the accelerated interest rate.

Time is of the essence hereof. In the event that Payor fails to pay any installment of principal or interest within fifteen (15) days after its due date, then, at the option of the Payee or other holder of this Note, the entire principal sum, plus all accrued interest, shall be immediately due and payable, without presentment, notice of dishonor, protest, further opportunity to cure, or any other demand or notice, said demands and notices being hereby expressly waived. Payee or other holder of this Note may exercise this option to accelerate after any default by Payor which is not cured within fifteen (15) days from the occurrence thereof, regardless of any prior forbearance.

The accelerated interest rate shall be eighteen percent (18%) per annum, and shall apply to all sums due and accruing hereunder or under the Mortgage or Security Agreement, as defined below, unless such would violate applicable usury laws, if any, in which case, the maximum legal rate permitted by applicable laws shall prevail.

This Note is issued pursuant to the provisions of that certain preferred ship mortgage (herein, the "Mortgage") dated the date hereof, from the Payor to the Payee relating to that certain vessel CAROL LINDA, Official Number 624971 (herein, the "Vessel") and that certain Security Agreement dated November 25 , 2009, between the Payor and Payee (herein, the "Security Agreement").

This Note has been negotiated and received by the Payee subject to and secured by the terms of the Mortgage and Security Agreement.

The undersigned agrees to pay and shall pay all reasonable costs and expenses of any nature (whether incurred in or out of court, and whether incurred before or after this Note shall become due at its maturity or otherwise) which Payee may deem necessary or proper in connection with the collection of sums due under the Note or in the administration, supervision, preservation, protection, care and maintenance of the Vessel or other collateral (herein, the "Collateral") pledged to the Payee in connection with the Note. The undersigned also agrees to pay all reasonable attorneys' fees incurred by Payee in connection with the foregoing costs and expenses (herein, collectively, the "Expenses").

FF-C-030

The Payee is authorized to pay and add to the indebtedness of the Payor, at any time and from time to time, any and all such Expenses, add the amount of such Expenses to the principal amount of the Note, the Mortgage and the Security Agreement and charge interest thereon, and any such Expenses shall be immediately due and payable and, until paid, shall bear interest at the rate of eighteen percent (18%) per annum, or such lessor rate which the Payee, in its sole discretion, may fix in writing.  In connection with said Expenses and notwithstanding the Payee's election to fix an interest rate of less than eighteen percent (18%), acceleration of sums due under the Note will result in the application of the accelerated interest rate of eighteen percent (18%) to all sums due hereunder, whether said sums constitute principal, interest or Expenses.

The term "Expenses" as used in this Note is understood by the Payor to include not only those costs and expenses which accrue directly under the terms of this Note, but also all of those costs and expenses which accrue under the terms of the Mortgage, the Security Agreement or any other agreements or obligations executed in connection with this Note, which costs and expenses shall be added to the principal indebtedness evidenced hereby.

The term "Collateral" as used in this Note shall, in addition to the meaning set forth above, also mean any funds, guaranties, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be hypothecated, directly or indirectly by the undersigned or others, in connection with, or as security for, this Note or any part hereof.

The obligation of the undersigned hereunder shall not be impaired by the Payee's indulgence, including, but not limited to (a) any renewal, extension, deferment or modification which the Payee may grant with respect to the Note or any part hereof, (b) any surrender, compromise, release, renewal, extension, exchange, or substitution, which the Payee may grant in respect of the said Mortgage, the Security Agreement or the Collateral, or (c) any indulgence granted in respect of any endorser, guarantor, grantor, or insurer.

This Note is not negotiable, assignable, or transferable without the prior written consent of the Payee.  This Note shall be cancelled by the Payee and surrendered to the Payor if all outstanding obligations accruing hereunder and under the Mortgage and Security Agreement are paid or performed.

All provisions of this Note shall be construed, given effect, and enforced according to the federal laws of the United States.  With respect to any claim or proceeding relating to this Note, the Payor hereby consents to and subjects itself to the jurisdiction of the United States District Court for the Western District of Washington and agrees that the venue of any action or proceeding relating to this Note shall lie exclusively in the United States District Court for the Western District of Washington, unless the Payee has instituted proceedings where the Vessel may be located and, in such case, Payor consents to and subjects itself to the jurisdiction of the federal court which maintains jurisdiction over the Vessel.

FF-C-030

This Note is severable, and in the event that any of its terms are declared invalid, the remaining terms shall be severed and remain in full force and effect.

When applicable, the obligation of the undersigned hereunder shall be joint and several. The undersigned hereby waives all surety defenses.

Vasco Enterprises, Incorporated

By: _Carolyn Freitas_

Name: _CAROLYNN FREITAS_

Title: _PRESIDENT_

STATE OF CALIFORNIA         )
                            ) ss
COUNTY OF San Diego         )

On November 25, 2009, before me, personally appeared **Carolyn Freitas**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this **Promissory Note to the United States of America** and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

WITNESS my hand and official seal

SEAL         _N Judd_
             Notary Public

N. JUDD
Commission # 1650951
Notary Public - California
San Diego County
My Comm. Expires Mar 12, 2010



FF-C-030

### PREFERRED SHIP MORTGAGE
### TO THE
### UNITED STATES OF AMERICA

THIS MORTGAGE, dated the _25th_ day of November, 2009, by

**Vasco Enterprises, Incorporated**, 100% (the "Mortgagor"), a California Corporation, doing business at c/o Harborside Enterprises, Inc. 5663 Balboa Avenue #461, San Diego, CA 98111

to the UNITED STATES OF AMERICA (the "Mortgagee"), acting by and through the Secretary of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service, Financial Services Division, F/MB5, 1315 East-West Highway, Silver Spring, MD 20910.

### WITNESSETH:

WHEREAS, the Mortgagor is the sole owner of the fishing vessel named CAROL LINDA (herein, the "Vessel"), Official Number 624971; and

WHEREAS, in connection with the Mortgagee providing financing to the Mortgagor for the Vessel, the Mortgagor has executed and delivered to the Mortgagee its promissory note (the "Note") dated November _25_ , 2009, in the principal amount of $3,000,000.00 a copy of which is attached hereto as Exhibit A, and has agreed to execute and deliver this Preferred Ship Mortgage (the "Mortgage") to the Mortgagee for the purpose of securing the payment of the principal, interest, fees and expenses due on the Note in accordance with its terms and the terms of this Mortgage.

NOW, THEREFORE, in consideration of the Mortgagee providing financing to the Mortgagor for the Mortgagor's Vessel, and for other good and valuable consideration, receipt whereof is hereby acknowledged by the Mortgagor, and in order to secure the payment of the principal of and interest on the Note and all other sums which accrue according to the terms thereof, and the payment of all other sums that may hereafter become secured by this Mortgage in accordance with the terms hereof and to secure the performance and observance of and compliance with the covenants, terms, and conditions herein and in the Note contained, the Mortgagor has granted, conveyed, mortgaged, pledged, assigned, transferred, set over, and confirmed and does hereby grant, convey, mortgage, pledge, assign, transfer, set over, and confirm unto the Mortgagee the whole of the Vessel described as follows:

The CAROL LINDA, Official Number 624971, together with all its boilers, engines, machinery, motors, masts, spars, sails, rigging, boats, skiffs, anchors, chains, cable, tackle, nets, pots, apparel, furniture, fittings, navigation equipment, propulsion equipment, fishing and fish processing equipment, and all other equipment, electronics, computers, software, electronic records, records and

Page 1 of 19

FF-C-030

papers whether on board or not, together with all accessories, substitutions, additions, replacements, improvements, parts and accessions now existing or hereafter made of, in or to the Vessel, any parts thereof, or the equipment and appurtenances aforesaid; together with all freights, subfreights, charter hire, subcharter hire, inventory, catch, cargoes, supplies, general intangibles, accounts receivable, contracts, contract rights, proceeds, product, rents and profits, issues, earnings, revenues, rents or other profits of the Vessel, together with all Federal and State permits, licenses and harvest privileges (expressly including, but not limited to, all fishing rights/licenses and related harvest/participatory privileges such as, but not limited to, Limited Entry Permits, Individual Fishing Quotas, Quota Shares, Individual Transferable Quotas, Community Development Quotas, License Limitations, Moratorium Qualifications, High Seas Permits, Allocations, Endorsements and Tags) now owned or hereafter acquired, whether now existing or hereafter created by rule, regulation, statute, legislation or Fishery Management Council action, whether or not any of the foregoing are vested in the name of the Mortgagor or appurtenant to the Vessel and regardless of whether or not any of the foregoing relate to or are necessary for the operation of the Vessel.

TO HAVE AND TO HOLD ALL the above-mortgaged and described property unto the Mortgagee and its successors and assigns, to its use and benefit forever;

PROVIDED ALWAYS, that if the Mortgagor, its successors or assigns shall pay, or cause to be paid, the principal of and interest on the Note in accordance with the terms of the Note and the Mortgage and shall pay any and all other sums that may hereinafter become secured by this Mortgage in accordance with the terms hereof, and shall keep, perform, and observe all of the covenants and promises in the Note and in the Mortgage contained, expressed, or implied to be kept, performed, and observed by or on the part of the Mortgagor, then this Mortgage and the estate and rights hereby granted shall cease and be void; otherwise to remain in full force and effect.

The Mortgagor hereby covenants and agrees that the Vessel is subject to the further covenants, conditions, and uses hereinafter set forth as follows:

ARTICLE I

THE MORTGAGOR HEREBY COVENANTS AND AGREES THAT:

Section 1.    The Mortgagor (i) is and shall continue to be a citizen of the United States in accordance with applicable law, including 46 U.S.C. § 50501, as amended, for coastwise trade, and (ii) is entitled to own and operate the Vessel under her marine document and shall maintain such marine document in full force and effect.   The Note and the Mortgage have been duly executed and delivered, and the Note in the hands of the holder thereof is and will be a valid and enforceable obligation of the Mortgagor in accordance with its terms.   The Mortgagor lawfully owns and is lawfully possessed of the whole of the Vessel



FF-C-030

free from any lien whatsoever, except the lien of this Mortgage and liens expressly permitted herein and other Preferred Ship Mortgages in favor of the United States of America, acting by and through the Secretary of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service, Financial Services Division, and covenants that it will warrant and defend the title and possession thereto and every part thereof for the benefit of the Mortgagee against the claims and demands of all persons whomever.

Section 2.    (a)  . The Mortgagor will, at all times and at its own expense, keep the Vessel insured with responsible underwriters and through responsible brokers, all in good standing and satisfactory to the Mortgagee, fully and adequately protecting the Vessel and the Mortgagee's interest therein against all marine perils and disasters and all hazards, risks, and liabilities in any way arising out of the ownership, operation, or maintenance of the Vessel, including but not limited to insurance as follows:

(i) While being operated, navigating hull insurance must be in an amount equal to the full commercial value of the Vessel. In no event may this be less than one hundred ten percent (110%) of the unpaid principal and interest, at the time outstanding, of the Note. The policy valuation on the hull shall not exceed the aggregate amount insured by hull policies.  The hull insurance shall be placed under the form of policy known as American Institute of Marine Underwriters form, or under such other forms of policy as the Mortgagee may approve, insuring against the usual risks covered by such policies, including four-fourths running down clause, Inchmaree clause, and breach of warranty clause;

(ii) Protection and indemnity insurance under form of protection and indemnity policies approved by the Mortgagee and issued by marine insurance companies approved by the Mortgagee.  The amount of protection and indemnity insurance shall be fixed by the Mortgagee; and

(iii) When and while the Vessel is laid up, and in lieu of the aforesaid navigating hull insurance referred to in (i) of this Section, port risk insurance under forms of port risk policies approved by the Mortgagee.

(b)    The Mortgagor expressly covenants and agrees to keep the policies renewed from time to time, to keep the same valid at all times for the amounts aforesaid, and to keep the premiums thereon fully paid at all times. The Mortgagor shall not do any act nor voluntarily suffer or permit any act to be done whereby insurance is or may be suspended, impaired, or defeated, and shall not suffer nor permit the Vessel to engage in any voyage or to carry any cargo not permitted under the policy or policies of insurance in effect, unless and until the Mortgagor shall first cover the Vessel in the amount herein provided for, with insurance satisfactory to the Mortgagee for such voyage or for the carriage of such cargo.

FF-C-030

(c)    In the event the Mortgagor fails to procure insurance satisfactory to the Mortgagee, or fails to perform any of the covenants and agreements contained herein, the Mortgagee may, but shall be under no duty to, procure such other or different insurance or coverage as it may deem in its sole discretion advisable as to the nature, form, type, class, amount and extent of such insurance or coverage; and all sums expended or advanced by the Mortgagee in procuring such insurance shall be deemed to be an indebtedness of the Mortgagor and shall be secured by this Mortgage and shall be immediately due and payable and, until paid, shall bear interest at the rate of eighteen percent (18%) per annum, or such lesser rate which the Secretary, in its sole discretion, may fix in writing. Notwithstanding the Secretary's election under this provision to fix an interest rate of less than eighteen percent (18%), acceleration of sums due under the Note will result in the application of the accelerated interest rate of eighteen percent (18%) to all sums due under this Mortgage.

(d)    All insurance shall be taken out in the name of the Mortgagor and the Mortgagee as their interests may appear and policies and certificates shall provide that there shall be no recourse against the Mortgagee for payment of premiums and shall further provide for at least 20 days prior written notice to be given to the Mortgagee by the underwriters in the event of cancellation or modification.    All original policies, binders, certificates, and covenants and all endorsements and riders thereto shall be delivered to the Mortgagee for approval and custody.

(e)    Except as provided herein and in paragraph (f) below, all insurance policies or certificates shall provide that losses thereunder shall be payable to the Mortgagee. If no Event of Default exists under this Mortgage, the Mortgagee may, in its sole discretion, pay, from the proceeds of the insurance directly to the repairer, the amount of any authorized repairs, or if the Mortgagor shall have first duly repaired the damage to the satisfaction of the Mortgagee and paid the cost thereof, to the Mortgagor as reimbursement therefor.  Any balance remaining from the aforesaid insurance proceeds will be applied as directed by the Mortgagee. If an Event of Default exists, the Mortgagee shall retain such insurance and if such Event of Default is not cured within fifteen (15) days of the occurrence thereof, apply the same in the manner provided in Article II, Section 11 hereof.

(f)    Any loss under any insurance on the Vessel with respect to protection and indemnity risks may be paid directly to the person to whom any liability covered by such insurance has been incurred or to the Mortgagor to reimburse the Mortgagor for any loss, damage, or expense incurred by the Mortgagor and covered by such insurance; provided, that the underwriter shall have first received evidence that the liability insured against has been discharged.

(g)    In the event of an actual or constructive total loss, or an agreed or compromised total loss of or in case of requisition of title to the Vessel, all amounts payable therefor shall, subject to Article II, Section 2 hereof



FF-C-030

be paid to the Mortgagee and shall be applied first, to the payment of the expenses of the Mortgagee in collecting such payments, and second, as provided in Article II, Section 11 hereof.

(h)   In the event that any claim or lien is asserted against the Vessel for loss, damage, or expense which is covered by insurance hereunder, and it is necessary for the Mortgagor to obtain a bond or supply other security to prevent arrest of the Vessel or to release the Vessel from arrest on account of such claim or lien, the Mortgagee, may, in the sole discretion of the Mortgagee, and upon notice to the Mortgagor, assign to any person, firm, or corporation executing a surety or guarantee bond or other agreements, to save or release the Vessel from such arrest, all right, title, and interest of the Mortgagee in and to said insurance covering said loss, damage, or expense, as collateral security to indemnify against liability under said bond or other agreement.

Section 3.   (a)   Neither the Mortgagor, any charterer, the Master of the Vessel, nor any other person has or shall have any right, power, or authority to create, incur, or permit to be placed, imposed, or continued upon the Vessel any lien whatsoever other than the lien of this Mortgage, or permitted liens as defined herein.

(b)   Permitted Liens.   "Permitted Liens" means liens or other charges or encumbrances:

(i)   arising for damages out of tort covered by insurance, except for any deductible amounts applicable thereto, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband or agent of any Vessel, for wages of the crew of the Vessel, for general average, for salvage, including contract salvage, provided the same are paid immediately when due;

(ii)   in favor of any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries to the Vessel on the order of Mortgagor, or of a person authorized by Mortgagor, provided the same are paid immediately when due;

(iii)   imposed on the Vessel for taxes or governmental charges or levies, provided the same are paid immediately when due;

(iv)   incurred in the ordinary course of business of the Vessel not relating to money borrowed which (1) will be paid immediately when due, and (2) which, in the aggregate, at any time are not material to the operations or financial condition of Mortgagor;

(v)   arising by operation of law as a result of the modification of the Vessel, including mechanic's liens, provided the same are paid immediately when due;



FF-C-030

(vi)   in favor of the United States of America, acting by and through the Secretary of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service, Financial Services Division.

(c)   As used herein, the term "immediately when due" shall mean the time when, according to applicable law, customary industry practices, or a prior course of dealing or other agreement between Mortgagor and the lienholder, the lienholder expects payment to be made; provided that, if Mortgagor desires to contest an asserted lien, Mortgagor may do so if Mortgagor acts in good faith and by appropriate proceedings and has set aside adequate reserves determined in accordance with generally accepted accounting principles.

Section 4.   The Mortgagor shall carry a properly certified copy of this Mortgage with the Vessel's papers on board the Vessel, shall exhibit the same on demand to any person having business with the Vessel, or to any representative of the Mortgagee, and shall place and keep prominently displayed in the pilot house, master's cabin and engine room of the Vessel a framed, printed or typewritten notice reading as follows:

"NOTICE OF MORTGAGE"

"This Vessel is covered by a Preferred Ship Mortgage given to the United States of America, under authority of 46 USC Chapter 313.  Under the terms of said Mortgage, neither the owner of this Vessel, any charterer, the Master of this Vessel, nor any other person has any right, power, or authority to create, incur, or permit to be imposed upon the Vessel any liens, maritime or otherwise, other than the lien of said Mortgage, liens for crew's wages or salvage and Permitted Liens, as expressly defined herein."

Section 5.   If a complaint shall be filed against the Vessel, or if the Vessel shall be levied upon or taken into custody, or detained by any proceeding in any court or tribunal, the Mortgagor will within fifteen (15) days thereafter cause the Vessel to be discharged.  In the event a complaint is filed against said Vessel, or in the event said Vessel is levied upon or taken into custody or detained by any authority whatsoever, the Mortgagor shall notify the Mortgagee forthwith by telegram, telefax or telex and confirmed by letter.

Section 6.   At all times, at the Mortgagor's own cost and expense, the Mortgagor will maintain and preserve the Vessel in as good condition, working order and repair as on the date of this Mortgage, ordinary wear and tear excepted; provided, however, if subsequent to the date of this Mortgage, the Vessel is reconstructed or reconditioned, the Mortgagor will keep the Vessel in as good condition, working order, and repair as the Vessel was on the date said reconstruction or reconditioning was completed, ordinary wear and tear



FF-C-030

excepted.  In addition to the foregoing, the Mortgagor will keep the Vessel in as good condition as will enable her to pass such inspection as may be required by marine underwriters as a condition of their writing such insurance in such amounts as are required under this Mortgage or as required by the United States Coast Guard as a condition to certifying that the Vessel is seaworthy and in compliance with all applicable safety, navigational, and pollution control requirements.  The Mortgagor shall afford the Mortgagee or its authorized representatives full and complete access to the Vessel for the purpose of inspecting the same, her cargo, log, and papers.  The Mortgagor shall furnish the Mortgagee full information regarding any casualties or other accidents or damage to the Vessel.

Section 7.    The Mortgagor will pay and discharge when due and payable from time to time all taxes, assessments, governmental charges, fines and penalties lawfully imposed on the Vessel.

Section 8.    The Mortgagor will reimburse the Mortgagee for any and all expenditures which the Mortgagee may elect to make from time to time to protect the security granted hereunder (in the event of the Mortgagor's failure to do so), including, without limitation of the foregoing, payment of taxes, repairs, insurance premiums, surveys, the discharge of any lien, payment of costs associated with a complaint filed against the Vessel or seizure of the Vessel, expenses incurred by the Mortgagee in retaking the Vessel and any other expenditures reasonably deemed necessary by the Mortgagee to protect and preserve the Vessel.  Any such payment or payments made by the Mortgagee shall be for the account of the Mortgagor and the making thereof by the Mortgagee shall not cure the Mortgagor's default in that regard nor constitute a waiver of any right or remedy granted to the Mortgagee hereunder, and all sums so expended by the Mortgagee or any liability incurred by it shall be immediately due and payable and shall be deemed to be an indebtedness of the Mortgagor and secured by this Mortgage, and until paid, shall bear interest at the rate of eighteen percent (18%) per annum, or such lesser rate which the Secretary, in its sole discretion, may fix in writing.  Notwithstanding the Secretary's election under this provision to fix an interest rate of less than eighteen percent (18%), acceleration of sums due under the Note will result in the application of the accelerated interest rate of eighteen percent (18%) to all sums due under this Mortgage.

Section 9.    (a)    The Mortgagor will not sell, mortgage, transfer, nor charter the Vessel without the prior written consent of the Mortgagee first having been obtained, and any such written consent to any one sale, mortgage, transfer, or charter shall not be construed to be a waiver of this provision in respect to any subsequent proposed sale, mortgage, transfer, or charter.  Any such sale, mortgage, transfer, or charter of the Vessel shall be subject to the provisions of this Mortgage and to the lien it creates.

(b)    The Mortgagor will not, without first obtaining written permission from the Secretary, transfer, sell, assign, hypothecate, or alienate or attempt to transfer, sell, assign, hypothecate or alienate any rights, licenses or

FF-C-030

permits appurtenant to and/or necessary for the Vessel to engage in any commercial fisheries and further covenants to do all things necessary to obtain and maintain such rights, licenses or permits. This covenant is expressly understood by the Mortgagor to include, but is not limited to, all fishing rights, Limited Entry Permits, Individual Fishing Quotas, Individual Transferable Quotas, Quota Shares, Community Development Quotas, License Limitations, Moratorium Qualifications, High Seas Permits, Allocations, Endorsements, Rights, Licenses and Tags relating to or arising by virtue of the fishing history or operations of the Vessel or the Mortgagor.

Section 10. The Mortgagor will comply with and satisfy all the provisions of 46 U.S.C. Chapter 313, in order to establish and maintain this Mortgage as a Preferred Ship Mortgage upon the Vessel.

Section 11. (a)   The Mortgagor will keep the Vessel documented under the laws of the United States and no transfer of port of documentation of the Vessel shall be made without the prior written consent thereto of the Mortgagee.

(b)   The Mortgagor will not cause or permit the Vessel to be operated in any manner contrary to law or contrary to any rules and regulations which may from time to time be prescribed pursuant to law, will not remove or attempt to remove the Vessel beyond the jurisdictional limits of the United States (unless the Secretary has consented in writing), will not abandon the Vessel in a foreign port, will not engage in any unlawful trade or violate any law or carry any cargo that will expose the Vessel to penalty, forfeiture, or capture, and will not do, or suffer or permit to be done, anything which can or may injuriously affect the documentation of the Vessel under the laws and regulations of the United States.

(c)   Upon demand by the Secretary to the master of the Vessel or the Mortgagor, the Mortgagor will return the Vessel to the waters known as the Exclusive Economic Zone of the United States and, if the Secretary so demands, to a port of call chosen by the Secretary, thereby revoking any prior written consent extended by the Secretary with respect to operation of the Vessel outside the Exclusive Economic Zone of the United States.

Section 12. The Mortgagor will duly and punctually pay the principal of and interest on the Note and the Mortgage as herein and in the Note provided, and will at all times keep, perform, and observe all of the covenants, conditions, stipulations, promises, and agreements in this Mortgage and in the Note (as either may, from time to time, be amended, substituted, restated or modified) expressed or implied on its part to be kept, performed, and observed, and will duly punctually pay all sums that may hereinafter become due hereunder.

Section 13. (a)   The Mortgagor will, and hereby does, authorize all Federal, State, and municipal authorities (i) to furnish reports of examination, records, and other information relating to the conditions and affairs of the Mortgagor, any desired information from reports, returns, files, tax returns, and records of such

FF-C-030

authorities upon request therefor by the Mortgagee and (ii) to permit the Mortgagee to have full access from time to time, to make copies of and extracts from, any and all reports, returns, files, tax returns, and records by, or with respect to the Mortgagor, and all reports of the examiner or other information concerning the Mortgagor contained in the files and records of such authorities.

(b)    The Mortgagor will permit the Mortgagee, at the Mortgagor's expense and in such manner and at such times as the Mortgagee may require, to (i) make inspections and audits of any books, records, and papers in the custody and control of the Mortgagor or others relating to the Mortgagor's financial or business conditions, including the making of copies thereof and extracts therefrom, and (ii) make inspections and appraisals of any of the Mortgagor's assets.

Section 14.   The Mortgagor will, in accordance with the requirements of Mortgagee, comply with all covenants and conditions which the Mortgagee may in its sole discretion reasonably require.

Section 15.   In the event that this Mortgage, the Note, or any provisions hereof or thereof, including amendments or substitutions with respect to either, shall be deemed invalid in whole or in part by reason of any present or future law of the United States or any decision of any authoritative court, or if the documents at any time held by the Mortgagee be deemed by the Mortgagee for any reason insufficient to carry out the true intent and spirit of this Mortgage and the Note, then, from time to time the Mortgagor will execute on its own behalf such other and further assurances and documents as in the opinion of counsel for the Mortgagee may be required to carry out the terms, conditions and intent of the Note, Mortgage and any other agreement or document executed by the Mortgagor in connection therewith.  Upon failure of the Mortgagor to do so, the Mortgagee may execute any and all such other and further assurances and documents, for and in the name of the Mortgagor, and the Mortgagor hereby irrevocably appoints the Mortgagee the agent attorney-in-fact of the Mortgagor to do so.  Any expenses of the Mortgagee in connection with the foregoing shall be a debt due from the Mortgagor to the Mortgagee in payment thereof and shall be secured by the lien of this Mortgage in a like manner as provided in Article I, Section 8 hereof.

Section 16.   The Mortgagor will faithfully comply with, observe, perform or discharge any and all covenants, conditions or obligations which are imposed on the Mortgagor by any other agreement or document executed in connection with this Mortgage or the Note, concurrently or otherwise, and that Mortgagor's material failure to do so shall constitute an Event of Default under this Mortgage.

Section 17.   The Mortgagor agrees that all reasonable attorneys' fees incurred by Mortgagee because of Mortgagor's failure to perform or discharge its obligations as provided by this Mortgage, the Note, or any other document or agreement executed in connection therewith shall be deemed to be an indebtedness of the Mortgagor and shall be secured by this Mortgage and shall

FF-C-030

be immediately due and payable and, until paid, shall bear interest at the rate of eighteen percent (18%) per annum, or such lesser rate which the Secretary, in its sole discretion, may fix in writing.  Notwithstanding the Secretary's election under this provision to fix an interest rate of less than eighteen percent (18%), acceleration of sums due under the Note will result in the application of the accelerated interest rate of eighteen percent (18%) to all sums due under this Mortgage.

Section 18.   The Mortgagor agrees, acknowledges and consents to and with the authority of the United States of America, acting by and through the Secretary of Commerce, to take all steps, measures or actions which are within the discretion or authority of the Secretary.

ARTICLE II

Section 1.     Each of the following events shall constitute an Event of Default:

(a)     default shall be made in the payment of any interest on the Note (including any amendments thereto or substitutions therefor) when and as the same shall become due and payable as therein and herein provided and such default shall continue for fifteen (15) days; or

(b)     default shall be made in the payment of the principal of the Note (including any amendments thereto or substitutions therefor) when and as the same shall become due and payable, whether at maturity, by notice of acceleration, or otherwise and such default shall continue for fifteen (15) days; or

(c)     default shall be made in the due and punctual observance and performance of any provision of Sections 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 or 18 of Article I, hereof and such default or defaults shall continue for fifteen (15) days; or

(d)     the Mortgagor shall be dissolved or adjudged a bankrupt or shall make a general assignment for the benefit of the Mortgagor's creditors, or shall lose the right to do business by forfeiture or otherwise, or a receiver or receivers of any kind whatsoever, whether appointed or not, in admiralty, bankruptcy, common law, or equity proceedings, and whether temporary or permanent, shall be appointed for the Vessel or for any other property of the Mortgagor; or a petition for reorganization of, or other proceeding or action in reference to the Mortgagor under any of the provisions of the Bankruptcy Code shall be filed by the Mortgagor or by creditors of the Mortgagor; or if reorganization of the Mortgagor under said Code is approved by the Court, whether proposed by a creditor, stockholder, or any other person whomsoever; or

(e)     there shall be an actual or constructive total loss of the Vessel; or

 

FF-C-030

(f)     default shall be made by the Mortgagor in the prompt and faithful performance or observance of any other covenant, condition, or agreement by it to be performed and observed, contained in this Mortgage or Note (as either may, from time to time, be amended, substituted, restated or modified), and such default shall continue for fifteen (15) days; or

(g)     the institution of any suit against the Mortgagor or others deemed by the Mortgagee to adversely affect its interest hereunder, in the Note or otherwise; or

(h)     default shall occur in the observance, performance or discharge of any of the covenants, conditions or obligations which are imposed on the Mortgagor by any agreement or document executed in connection with this Mortgage or the Note, concurrently or otherwise; or

(i)     the Mortgagor shall, without first obtaining written permission from the Secretary, transfer, sell, assign, hypothecate, or alienate or attempt to transfer, sell, assign, hypothecate or alienate any rights, licenses or permits appurtenant to and/or necessary for Vessel to engage in any commercial fisheries; or

(j)     the Mortgagor shall, intentionally or through neglect, permit a material diminution of the value of the Vessel and/or its appurtenances and equipment.

Section 2.     Upon occurrence of an Event of Default, the Mortgagee, may in its discretion:

(a)     Declare the Note to be due and payable immediately and upon such declaration, the entire principal of and interest on the Note shall become and be immediately due and payable, and thereafter shall bear interest at eighteen percent (18%) per annum, unless such would violate applicable usury laws, if any, in which case, the maximum legal rate permitted by applicable laws shall prevail; provided, however, that if the Mortgagor shall have removed and remedied each Event of Default within fifteen (15) days after the occurrence thereof, then in every such case, the Mortgagee shall waive any such Event of Default; but no such waiver shall extend to nor affect any subsequent or other Event of Default nor impair any rights or remedies consequent thereon; and provided, further, that if at any time after the expiration of fifteen (15) days after any Event of Default shall have occurred, all Events of Default shall have been remedied and removed and full performance made by the Mortgagor to the satisfaction of the Mortgagee and all installments of principal and interest in arrears (including interest at the rate per annum, as aforesaid) and the reasonable charges and expenses, if any, of the Mortgagee, its agents and attorneys, shall have been paid (including interest at the rate per annum, as aforesaid), then and in every such case the Mortgagee may, in its discretion, waive any such Event of Default; and provided, also, that no waiver hereunder

FF-C-030

shall extend to nor affect any subsequent or other Event of Default nor impair any rights or remedies consequent thereon.

(b)   Bring suit at law, in equity, or in admiralty, as it may be advised, to receive judgment for any and all amounts due under the Note, or otherwise hereunder, and collect the same out of any and all property of the Mortgagor whether covered by this Mortgage or otherwise.

(c)   · Retake the Vessel without legal process wherever the same may be found, and the Mortgagor or other person in possession, forthwith upon demand of the Mortgagee, shall immediately surrender to the Mortgagee possession of the Vessel, and, without being responsible for loss or damage, the Mortgagee may hold, lay-up, lease, charter, operate, or otherwise use the Vessel for such time and upon such terms as it may deem to be for its best advantage, accounting only for the net profits, if any, arising from such use of the Vessel and charging against all receipts from the use of the Vessel, or from the sale thereof by court proceeding or pursuant to subsection (e) below, all costs, expenses, charges, damages, or losses by reason of such use; and if at any time the Mortgagee shall avail itself of the right herein given it to retake the Vessel and shall retake it, the Mortgagee shall have the right to dock the Vessel for a reasonable time at any dock, pier, or other premises of the Mortgagor without charge, or to dock it at any other place at the cost and expense of the Mortgagor; IT IS EXPRESSLY UNDERSTOOD AND AGREED TO BY THE MORTGAGOR THAT SURRENDER OF THE VESSEL UNDER THIS SECTION MUST BE AND WILL BE IMMEDIATE AND IN ACCORDANCE WITH THE DIRECTIONS OF THE MORTGAGEE.   FAILURE OF THE MORTGAGOR TO IMMEDIATELY COMPLY WITH THE MORTGAGEE'S DEMAND FOR SURRENDER OF THE VESSEL WILL CAUSE THE POSSESSION OF THE VESSEL BY THE MORTGAGOR (INCLUDING, BUT NOT LIMITED TO, POSSESSION AND CONTROL OF THE VESSEL BY A MASTER OR CREW MEMBER ON BOARD THE VESSEL) TO BE UNLAWFUL AND TO CONSTITUTE A CONVERSION OF THE VESSEL ITS APPURTENANCES AND EQUIPMENT, THEREBY SUBJECTING THE MORTGAGOR (EXPRESSLY INCLUDING, · IF APPLICABLE, ITS OFFICERS AND DIRECTORS) TO ALL FINES, PENALTIES AND ACTIONS WHICH THE MORTGAGEE DEEMS APPLICABLE AND APPROPRIATE.   SHOULD THE MORTGAGOR CONTINUE TO OPERATE, POSSESS OR CONTROL THE VESSEL CONTRARY TO THE MORTGAGEE'S DIRECTIONS AND THE PROVISIONS HEREIN, THEN THE MORTGAGEE SHALL, IN ADDITION TO ANY OTHER RIGHTS AND REMEDIES AT LAW AND IN EQUITY, BE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND/OR ORDER FOR INJUNCTIVE RELIEF NECESSARY TO GAIN COMPLIANCE HEREWITH.   IN ADDITION TO EXPRESSLY CONSENTING THAT THE INJURY AND DAMAGE RESULTING FROM BREACH HEREOF WOULD BE IMPOSSIBLE TO MEASURE MONETARILY, MORTGAGOR EXPRESSLY WAIVES ANY DEFENSE BASED UPON AN ALLEGED EXISTENCE OF AN ADEQUATE REMEDY AT LAW.

FF-C-030

     (d)    Foreclose this Mortgage pursuant to the terms and provisions of the 46 USC Chapter 313, or by other judicial process as may be provided in the statutes.

     (e)    In addition to any and all other rights, powers, and remedies elsewhere in this Mortgage or by law granted to and conferred upon the Mortgagee, sell the Vessel upon such terms and conditions as it may deem to be for its best advantage, including the right to sell and dispose of the Vessel free from any claim of or by the Mortgagor, at public sale, by sealed bids or otherwise, after first giving notice of the time and place of sale, with a general description of the property by first publishing notice of any such sale for ten (10) consecutive days, except Sundays, in some newspaper of general circulation at the place designated for such sale, and by mailing notice of such sale to the Mortgagor at his last known address; such sale may be held at such place and at such time as the Mortgagee in such notice may have specified, or may be adjourned by the Mortgagee from time to time by announcement at the time and place appointed for such sale or for such adjourned sale, and without further notice of publication and the Mortgagee may make any such sale at the time and place to which the same shall be so adjourned; and any such sale may be conducted without bringing the Vessel to the place designated for such sale and in such manner as the Mortgagee may deem to be for its best advantage, and the Mortgagee may become the purchaser at any such sale, and shall have the right to credit on the purchase price any or all sums of money due to the Mortgagee under the Note, or otherwise hereunder.   THE MORTGAGOR EXPRESSLY AGREES AND ACKNOWLEDGES THAT SALE OF THE VESSEL PURSUANT TO THIS SECTION WILL NOT IMPAIR OR LIMIT THE MORTGAGEE'S LEGAL RIGHT TO COLLECT FROM THE MORTGAGOR ANY DEFICIENCY REMAINING AFTER THE SALE. IF ANY APPLICABLE LEGAL AUTHORITIES MAY BE CONSTRUED TO LIMIT THE MORTGAGEE'S RIGHTS TO COLLECTION OF SAID DEFICIENCY FROM THE MORTGAGOR, THEN MORTGAGOR HEREBY EXPRESSLY WAIVES, RELINQUISHES AND FOREVER GIVES UP THE RIGHT TO AVAIL ITSELF OF SUCH LEGAL AUTHORITIES.

Section 3.    Any sale of the Vessel pursuant to this Mortgage shall operate to divest and forever bar the Mortgagor from any and all right, title, and interest of any nature whatsoever of the Mortgagor therein and thereto.  No purchaser shall be bound to inquire whether notice has been given, or whether any Default has occurred, or as to the propriety of the sale, or as to the application of proceeds thereof.

Section 4.    The Mortgagor does hereby irrevocably appoint the Mortgagee the true and lawful attorney of the Mortgagor, in its name and stead to make all necessary transfers of the Vessel, and for that purpose it shall execute all necessary instruments of assignment and transfer, the Mortgagor hereby ratifying and confirming all that its said attorney shall lawfully do by virtue hereof. Nevertheless, the Mortgagor shall, if so requested by the Mortgagee, ratify and confirm such sale by executing and delivering to the purchaser of the Vessel

 

FF-C-030

such proper bill of sale, conveyance, instrument of transfer, and release as may be designated in such request.

Section 5.    The Mortgagor hereby irrevocably appoints the Mortgagee the true and lawful attorney of the Mortgagor so long as an Event of Default shall have occurred and shall not have been waived in accordance with Section 2 hereof, in the name of the Mortgagor, to demand, collect, receive, compromise and sue for, so far as may be permitted by law, all hire, earnings, issues, revenues, income, and profits of the Vessel and all amounts due from underwriters under any insurance thereon as payment of losses or as return premiums or otherwise, salvage awards and recoveries, recoveries in general average or otherwise, any right of action against the designer, builder, surveyor, or other material party for any fault, negligence, or deficiency in design, construction or survey of the Vessel and all other sums, due or to become due, at or after the time of the happening of any Event of Default in respect of the Vessel or in respect of any insurance thereon from any person whomsoever, and to make, give and execute in the name of the Mortgagor, acquittances, receipts, releases or other discharges for the same, whether under seal or otherwise, and to endorse and accept in the name of the Mortgagor all checks, notes, drafts, warrants, agreements, and all other instruments in writing with respect to the foregoing.

Section 6.    The Mortgagor covenants and agrees that, so long as an Event of Default shall have occurred and shall not have been waived in accordance with Section 2 hereof, the Mortgagee in any suit to enforce any of its rights, powers, or remedies shall be entitled as a matter of right and not as a matter of discretion (i) to the appointment of a receiver or receivers of the Vessel and that any receiver so appointed shall have full right and power to use and operate the Vessel, and (ii) to a decree ordering and directing the sale and disposal of the Vessel, and the Mortgagee may become the purchaser at said sale, and the Mortgagee shall have the right to credit on the purchase price any and all sums of money due to the Mortgagee under the Note or otherwise hereunder.

Section 7.    (a)    In the event that the Vessel shall be arrested or detained by a marshal or other officer of any court of law, equity, or admiralty jurisdiction in any country or nation of the world or by any government or other authority and shall not be released from arrest or detention within thirty (30) days from the date of arrest or detention, the Mortgagor does hereby authorize and empower the Mortgagee in the name of the Mortgagor and does hereby irrevocably appoint the Mortgagee and its successors and assigns the true and lawful attorney of the Mortgagor, in its name and stead to apply for and receive possession of and to take possession of the Vessel with all rights and powers that the Mortgagor might have, possess, or exercise in any such event; and this power of attorney shall be irrevocable and may be exercised not only by the Mortgagee but also by an appointee or appointees, with full power of substitution, to the same extent as if the said appointee or appointees had been named as one of the attorneys above named by express designation.

FF-C-030

(b)    The Mortgagor also authorizes and empowers the Mortgagee or the Mortgagee's appointee or appointees, as the true and lawful attorney of the Mortgagor, to appear in the name of the Mortgagor, or its successors or assigns, in any court of any country or nation of the world where a suit is pending against the Vessel because of or on account of any alleged lien against the Vessel from which the Vessel has not been released and to take such proceedings as to them or any of them as may seem proper towards the defense of such suit and the discharge of such lien, and all expenditures made or incurred by them or any of them for the purpose of such defense or discharge shall be deemed to be an indebtedness of the Mortgagor and shall be secured by this Mortgage and shall be immediately due and payable and, until paid, shall bear interest at the rate of eighteen percent (18%) per annum, or such lesser rate which the Secretary, in its sole discretion, may fix in writing. Notwithstanding the Secretary's election under this provision to fix an interest rate of less than eighteen percent (18%), acceleration of sums due under the Note will result in the application of the accelerated interest rate of eighteen percent (18%) to all sums due under this Mortgage.

Section 8.    (a)    The Mortgagor hereby expressly and irrevocably consents to the jurisdiction of any court in any country whatsoever wherein the Vessel may at any time be located for the foreclosure of this Mortgage, the sale of the Vessel, or the enforcement of any other remedy or right hereunder, and hereby expressly and irrevocably submits the person of the Mortgagor and the Vessel to the jurisdiction of any such court in any country in any such action or proceeding.

(b)    This Mortgage shall in all respects be governed by and construed in accordance with the federal laws of the United States.   The Mortgagor irrevocably submits to the jurisdiction of the federal court situated in the State of Washington in any proceeding relating to this Mortgage and agrees that any process or summons in any such action may be served by mailing to Mortgagor a copy thereof, unless the Mortgagee has instituted proceedings where the Vessel may be located and in such case, Mortgagor consents to and subjects itself to the jurisdiction of the federal court which maintains jurisdiction over the Vessel.

Section 9.    (a)    Each and every power and remedy herein specifically given to the Mortgagee or otherwise in this Mortgage shall be cumulative and shall be in addition to every other power and remedy herein specifically given or now or hereafter existing at law, in equity, admiralty, or by statute, and each and every power and remedy whether specifically herein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by the Mortgagee, and shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other power or remedy.   No delay or omission by the Mortgagee in the exercise of any right or power or in the pursuance of any remedy occurring upon any Event of Default shall impair any such right, power, or remedy or be construed to be a waiver of any such Event of Default or to be any acquiescence therein; nor shall the acceptance by the Mortgagee of any security or of any payment of or on account of the Note



FF-C-030

maturing after any Event of Default or of any payment on account of any past Event of Default be construed to be a waiver of any right to take advantage of any future Event of Default or of any past Event of Default not completely cured thereby.

(b)     The Mortgagee, in addition to such other rights or remedies it may have, shall have the right, in its discretion, to take any and all action authorized by 46 App. USC Sections 1275(c) and 1275(e) of Title XI and, to the extent not in express conflict with the action authorized by said Sections, any and all action provided for in or authorized or permitted by or in respect of this Mortgage, Note, Collateral or Security, and Policies of Insurance (including all action provided for in or authorized or permitted by or in respect of any or all said documents by the Mortgagee) and public policy, as the case may be.

Section 10.   In case the Mortgagee shall have proceeded to enforce any right, power, or remedy under this Mortgage by foreclosure, entry, or otherwise, and such proceedings shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Mortgagee, then and in every such case the Mortgagor and the Mortgagee shall be restored to their former positions and rights hereunder with respect to the property subject or intended to be subject to this Mortgage, and all rights, remedies, and powers of the Mortgagee shall continue as if no proceedings had been taken.

Section 11.   The proceeds of any sale of the Vessel (after paying or deducting, in the case of sale under any judicial proceedings, the fees, costs, and other charges therein), and the net earnings from any management, charter, or other use of the Vessel by the Mortgagee under any of the powers above specified, and the proceeds of any claim for damages on account of the Vessel received by the Mortgagee while exercising any such power, and the proceeds of any insurance on the Vessel (subject to the provisions of this Mortgage) shall be applied as follows:

First:     To the payment of all expenses and charges including the expenses of any sale, counsel fees, the expenses of any taking of possession of the Vessel, and any other expenses or advances made or incurred by the Mortgagee in the protection and preservation of the Vessel or of its rights or in the pursuance of its remedies hereunder and to the payment of any damages sustained by Mortgagee from the default or defaults of the Mortgagor; and at the option of the Mortgagee, to provide a fund adequate in the opinion of the Mortgagee to furnish suitable indemnity against liens claiming priority over this Mortgage.

Second:     To the payment of the amount then due and unpaid upon the Note for principal and interest and other sums accruing thereunder, including, but not limited to, costs and expenses of collection.

Third:     To the payment of all other sums secured hereby, including fees, whether due or not, and of all damages liquidated or otherwise hereunder.

FF-C-030

Fourth: Any surplus then remaining shall belong and be paid or returned to the Mortgagor or to whomever shall be lawfully entitled to receive the same.

## ARTICLE III

Until an Event of Default hereunder shall happen, the Mortgagor (a) shall be suffered and permitted to retain actual possession and use of the Vessel and (b) subject to Article I, Section 6, hereof, shall have the right, from time to time, in its discretion, and without application to the Mortgagee, and without obtaining a release thereof by the Mortgagee, to dispose of, free from the lien hereof, any boilers, engines, machinery, bowsprits, masts, spars, sails, rigging, boats, fishing gear, anchors, chains, tackle, apparel, furniture, fittings, electronics, equipment, or any other appurtenances of the Vessel that are no longer useful, necessary, profitable, or advantageous in the operation of the Vessel, PROVIDED THAT, the Mortgagor, first or simultaneously therewith, replaces the same with new boilers, engines, machinery, bowsprits, masts, spars, sails, rigging, boats, fishing gear, anchors, chains, tackle, apparel, furniture, fittings, electronics, equipment, or other appurtenances of greater value, which replacements shall forthwith become subject to the lien of this Mortgage. This provision is not intended to authorize the disposal of any of the foregoing in connection with or related to a material change in the fishing operations of the Vessel. Any such change and actions related thereto or in anticipation thereof shall require prior written approval of the Mortgagee.

## ARTICLE IV

Section 1. This Mortgage may be executed simultaneously in any number of counterparts and all such counterparts executed and delivered each as an original shall constitute but one and the same instrument. The invalidity of any provision of this Mortgage shall not affect the remainder, which shall, in such event, be construed as if the invalid provision had not been inserted.

Section 2. All the covenants, promises, stipulations, and agreements of the Mortgagor in this Mortgage shall bind the Mortgagor, the Mortgagor's heirs, executors, administrators, successors, and assigns. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

Section 3. Nothing in this Mortgage shall be construed as a waiver of the preferred status of this Mortgage by the Mortgagee. In the event that any provision of this Mortgage would, as a matter of law, operate to waive the preferred status thereof, such provision for all intents and purposes, shall be deemed eliminated therefrom as though such provision had never been inserted herein.

FF-C-030

Section 4.    This Mortgage may not be amended or supplemented except in writing by the Mortgagor with the written consent thereto of the Mortgagee. The provisions of this Mortgage may not be waived except in writing by the Mortgagee.

Section 5.    The term "policies of insurance" as used herein, means any and all insurance policies and related binders, riders, endorsements, certificates of entry, etc., e.g. those referred to in Section 2 of Article I.

Section 6.    The term "Collateral" as used herein, means any funds, guaranties, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be hypothecated, directly or indirectly by the undersigned or others, in connection with, or as security for, this Mortgage or any part hereof.

Section 7.    If all sums (principal, interest and costs and expenses of collection) accruing under the Note, as may, from time to time, be amended, restated, modified or substituted, shall be paid in accordance with its terms and the terms of this Mortgage, and all other sums that may have become secured by the lien of this Mortgage shall be paid, then this Mortgage and the estate and rights hereunder shall cease, terminate and be void and Mortgagee, on request of Mortgagor and at Mortgagor's cost and expense, shall execute on forms prepared by Mortgagor and satisfactory to Mortgagee and deliver to Mortgagor proper instruments acknowledging satisfaction of and discharging this Mortgage.

IN WITNESS WHEREOF, THE MORTGAGOR has executed this Mortgage the day and year first above written.

MORTGAGOR:

Vasco Enterprises, Incorporated

By: _Carolyn Freitas_____

Name: _CAROLYN FREITAS_____

Title: _PRESIDENT_____

Page 18 of 19

FF-C-030

STATE OF CALFORNIA          )
                            )  ss.
COUNTY OF San Diego         )

On November 25, 2009, before me, personally appeared **Carolynn Freitas**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this **Preferred Ship Mortgage to the United States of America** and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

WITNESS my hand and official seal.

SEAL                    N Judd
                        _____
                        Notary Public

N. JUDD
Commission # 1650953
Notary Public - California
San Diego County
My Comm. Expires Mar 12, 2010

Page 19 of 19

FF-C-030

# PROMISSORY NOTE TO THE UNITED STATES OF AMERICA

City and State: *San Diego, California*
Date: November _25_, 2009

FOR VALUE RECEIVED, **Vasco Enterprises, Incorporated**, the undersigned (the "Payor") promises to pay to the order of the UNITED STATES OF AMERICA, acting by and through the Secretary of Commerce, NOAA/NMFS (the "Payee"), the principal amount of THREE MILLION & NO/100 Dollars ($3,000,000.00) with interest on the unpaid principal computed from the date of funding at the rate of FIVE & 785/1000 percent (5.785%) per year, payments to be made in installments as follows:

Payments of $75,131.57 including principal and interest payable quarterly with the first payment due February _25_, 2010 and each three months thereafter with the balance of principal and interest due in full November _25_, 2024.

Payments in lawful money of the United States of America shall be made payable to the United States Department of Commerce/NOAA/NMFS, or as the Payee or other holder of this Note may from time-to-time designate in writing to Payor. Payments shall be applied first to accrued interest and the balance of the payment, if any, shall be applied to principal. Payor shall identify each payment by the designation FF-C-030 and shall mail each payment as follows:

U. S. Department of Commerce, NOAA
P. O. Box 979008
St. Louis, MO 63197-9000

Payor may prepay principal at any time, and from time to time, without penalty. However, the Payee or other holder of this Note may require that any partial prepayments be made on the date quarterly installments are due. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent quarterly installments or change the amount of such installments, unless the Payee or other holder of this Note shall otherwise agree in writing.

Payor acknowledges that late payment to Payee or other holder of this Note will cause Payee or such other holder to incur costs not contemplated by this indebtedness. Such costs include, without limitation, processing and accounting charges. Therefore, if any installment is not received by Payee or such other holder within fifteen (15) days of its due date, then, at the option of the Payee or other holder, Payor shall pay an additional sum of five percent (5%) of the overdue amount or one thousand dollars ($1,000.00), whichever is less, as a late charge. The parties agree that this late charge represents a reasonable sum considering all of the circumstances existing on the date of this agreement and

Page 1 of 4

Exhibit A



FF-C-030

represents a fair and reasonable estimate of the costs that Payee or such other holder will incur by reason of late payment. The parties further agree that proof of actual damages would be costly or inconvenient. Acceptance of or the election not to assess any late-charge shall not constitute a waiver of any default with respect to any overdue amount, and shall not prevent Payee or such other holder from exercising any of the other rights and remedies available to Payee or such other holder, including, but not limited to, Payee's option to declare all sums owing hereunder to be immediately due and payable and to accrue interest at the accelerated interest rate.

Time is of the essence hereof. In the event that Payor fails to pay any installment of principal or interest within fifteen (15) days after its due date, then, at the option of the Payee or other holder of this Note, the entire principal sum, plus all accrued interest, shall be immediately due and payable, without presentment, notice of dishonor, protest, further opportunity to cure, or any other demand or notice, said demands and notices being hereby expressly waived. Payee or other holder of this Note may exercise this option to accelerate after any default by Payor which is not cured within fifteen (15) days from the occurrence thereof, regardless of any prior forbearance.

The accelerated interest rate shall be eighteen percent (18%) per annum, and shall apply to all sums due and accruing hereunder or under the Mortgage or Security Agreement, as defined below, unless such would violate applicable usury laws, if any, in which case, the maximum legal rate permitted by applicable laws shall prevail.

This Note is issued pursuant to the provisions of that certain preferred ship mortgage (herein, the "Mortgage") dated the date hereof, from the Payor to the Payee relating to that certain vessel CAROL LINDA, Official Number 624971 (herein, the "Vessel") and that certain Security Agreement dated November 25, 2009, between the Payor and Payee (herein, the "Security Agreement").

This Note has been negotiated and received by the Payee subject to and secured by the terms of the Mortgage and Security Agreement.

The undersigned agrees to pay and shall pay all reasonable costs and expenses of any nature (whether incurred in or out of court, and whether incurred before or after this Note shall become due at its maturity or otherwise) which Payee may deem necessary or proper in connection with the collection of sums due under the Note or in the administration, supervision, preservation, protection, care and maintenance of the Vessel or other collateral (herein, the "Collateral") pledged to the Payee in connection with the Note. The undersigned also agrees to pay all reasonable attorneys' fees incurred by Payee in connection with the foregoing costs and expenses (herein, collectively, the "Expenses").

 

FF-C-030

The Payee is authorized to pay and add to the indebtedness of the Payor, at any time and from time to time, any and all such Expenses, add the amount of such Expenses to the principal amount of the Note, the Mortgage and the Security Agreement and charge interest thereon, and any such Expenses shall be immediately due and payable and, until paid, shall bear interest at the rate of eighteen percent (18%) per annum, or such lessor rate which the Payee, in its sole discretion, may fix in writing.  In connection with said Expenses and notwithstanding the Payee's election to fix an interest rate of less than eighteen percent (18%), acceleration of sums due under the Note will result in the application of the accelerated interest rate of eighteen percent (18%) to all sums due hereunder, whether said sums constitute principal, interest or Expenses.

The term "Expenses" as used in this Note is understood by the Payor to include not only those costs and expenses which accrue directly under the terms of this Note, but also all of those costs and expenses which accrue under the terms of the Mortgage, the Security Agreement or any other agreements or obligations executed in connection with this Note, which costs and expenses shall be added to the principal indebtedness evidenced hereby.

The term "Collateral" as used in this Note shall, in addition to the meaning set forth above, also mean any funds, guaranties, or other property or rights therein of any nature whatsoever or the proceeds thereof which may have been, are, or hereafter may be hypothecated, directly or indirectly by the undersigned or others, in connection with, or as security for, this Note or any part hereof.

The obligation of the undersigned hereunder shall not be impaired by the Payee's indulgence, including, but not limited to (a) any renewal, extension, deferment or modification which the Payee may grant with respect to the Note or any part hereof, (b) any surrender, compromise, release, renewal, extension, exchange, or substitution, which the Payee may grant in respect of the said Mortgage, the Security Agreement or the Collateral, or (c) any indulgence granted in respect of any endorser, guarantor, grantor, or insurer.

This Note is not negotiable, assignable, or transferable without the prior written consent of the Payee.  This Note shall be cancelled by the Payee and surrendered to the Payor if all outstanding obligations accruing hereunder and under the Mortgage and Security Agreement are paid or performed.

All provisions of this Note shall be construed, given effect, and enforced according to the federal laws of the United States. With respect to any claim or proceeding relating to this Note, the Payor hereby consents to and subjects itself to the jurisdiction of the United States District Court for the Western District of Washington and agrees that the venue of any action or proceeding relating to this Note shall lie exclusively in the United States District Court for the Western District of Washington, unless the Payee has instituted proceedings where the Vessel may be located and, in such case, Payor consents to and subjects itself to the jurisdiction of the federal court which maintains jurisdiction over the Vessel.

FF-C-030

This Note is severable, and in the event that any of its terms are declared invalid, the remaining terms shall be severed and remain in full force and effect.

When applicable, the obligation of the undersigned hereunder shall be joint and several. The undersigned hereby waives all surety defenses.

Vasco Enterprises, Incorporated

By: *Carolyn Freitas*

Name: CAROLYN FREITAS

Title: PRESIDENT

STATE OF CALIFORNIA        )
                           ) ss
COUNTY OF San Diego        )

On November 25, 2009, before me, personally appeared Carolyn Freitas, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this **Promissory Note to the United States of America** and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

WITNESS my hand and official seal

SEAL                *N. Judd*

                    Notary Public

N. JUDD
Commission # 1660951
Notary Public - California
San Diego County
My Comm. Expires Mar 12, 2010

Page 4 of 4

FF-C-030

# GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT, is made and entered into by

**John Freitas, Carolyn Freitas and Nazary Caboz** (herein, collectively, the "Guarantors")

and the UNITED STATES OF AMERICA, acting by and through the Secretary of Commerce, National Oceanic and Atmospheric Administration, National Marine Fisheries Service, Financial Services Division (the "Secretary").

WHEREAS, Vasco Enterprises, Incorporated, (herein, the "Obligor") is the sole owner of the fishing vessel named CAROL LINDA, (herein, the "Vessel"), Official Number 624971.

WHEREAS, in connection with the Secretary providing financing to the Obligor for the Vessel, the Obligor has executed and delivered to the Secretary its promissory note (herein, the "Note") dated November _25_, 2009, in the principal amount of $3,000,000.00 and has agreed to execute and deliver that certain preferred ship mortgage (herein, the "Mortgage") to the Secretary for the purpose of securing the payment of the principal of and interest on the Note in accordance with its terms and the terms of the Mortgage.

WHEREAS, this Guaranty Agreement is executed and delivered by the Guarantors in order to induce the Secretary to enter into the aforementioned transaction with the Obligor.

WHEREAS, the Guarantors understand that the Secretary is unwilling to enter into the aforementioned transaction, unless the above-referenced Note shall also be guaranteed unconditionally by the Guarantors.

NOW, THEREFORE, in consideration of the premises and the mutual promises of the Guarantors, the Guarantors jointly and severally agree with and unconditionally guarantee to the Secretary the following:

1.     The Guarantors unconditionally guarantee that all sums stated in, arising or accruing under the Note, including amendments thereto, to be payable to the Secretary shall be promptly paid in full when due, in accordance with the provisions governing such payment. This Guaranty Agreement is unconditional and absolute and if for any reason such sums, or any part thereof, shall not be paid promptly when due, the Guarantors will immediately pay the same to the Secretary pursuant to the provisions governing such payment, regardless of any defenses or rights of set-off or counterclaims which the Obligor, Guarantors or any other party may have or assert, and regardless of whether the Secretary shall have taken any steps to enforce any rights against the Obligor, the Guarantors or any other person to collect such sums, or any part thereof, and

EXHIBIT C

FF-C-030

regardless of any other condition or contingency. The Guarantors also expressly agree to pay the Secretary all the costs and expenses of collecting such sums, or any part thereof, or of enforcing this Guaranty Agreement, expressly including, but not limited to, attorneys' fees. It is expressly understood by the Guarantors that collection expenses may accrue rapidly and result in significant expenses for which the Guarantors agree to be liable. It is further agreed to and understood by the Guarantors that "costs and expenses" of collection are deemed to include any and all costs which the Secretary may incur to collect sums due under the Note or hereunder or to protect and preserve collateral pledged in relation to the obligation, regardless of whether said collateral was pledged by the Guarantors. THE GUARANTORS AGREE TO BE LIABLE FOR AND PAY FOR SAID COSTS AND EXPENSES (INCLUDING ALL INTEREST CHARGES THEREON) WHICH WILL CONTINUE TO ACCRUE UNTIL SUCH TIME AS THE GUARANTORS FULLY SATISFY AND DISCHARGE THE OBLIGATIONS ARISING UNDER THIS GUARANTY AGREEMENT.

2.    The Guarantors unconditionally guarantee that the Obligor will promptly and punctually pay all other sums payable under the Note and the Mortgage, including any amendments or substitutions therefor, and will duly perform and observe each and every agreement, covenant, term and condition in such Note and the Mortgage, or amendments thereto, to be performed or observed by the Obligor, and upon the Obligor's failure to do so, the Guarantors will promptly pay such sums and duly perform and observe each such agreement, covenant, term and condition, or cause the same promptly to be performed and observed.

3.    The Guarantors hereby waive all surety defenses. Accordingly, and without limiting the generality of the foregoing, the obligations, covenants, agreements and duties of the Guarantors under this Guaranty Agreement shall in no way be affected or impaired by reason of the happening from time to time of any of the following with respect to the Note or the Mortgage, including amendments or substitutions therefor, or any other document executed in connection therewith, even though any such happening should occur without notice to the Guarantors or without the further consent of the Guarantors:

a.    the waiver by the Secretary, or its successors or assigns, of the performance or observance by the Obligor, the Guarantors or any other party of any of the agreements, covenants, terms or conditions contained in the Note, the Mortgage or any other document executed in connection therewith;

b.    the extension, in whole or in part, of the time for payment by the Obligor, the Guarantors or any other party to the obligation of any sums owing or payable under the Note, the Mortgage or this Guaranty Agreement or of the time for performance by the Obligor, the Guarantors or any other party, of any other obligations under or arising out of or on account of the Note, the Mortgage or any other document executed in connection therewith;

Page 2 of 7

EXHIBIT C

FF-C-030

   c.    the modification or amendment (whether material or otherwise) of any of the obligations of the Obligor, any of the Guarantors or any other party, as set forth in the Note, the Mortgage or any other document executed in connection therewith;

   d.    the doing or the omission of any of the acts referred to in the Note, the Mortgage or any other document executed in connection therewith;

   e.    any failure, omission, or delay of the Secretary to enforce, assert, or exercise any right, power or remedy conferred on the Secretary in the Note, the Mortgage or any other document or agreement executed in connection therewith, or any action on the part of the Secretary granting indulgence or extension in any form whatsoever;

   f.    the voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition, or readjustment of, or other similar proceeding affecting the Obligor or any of its assets or any other party to the obligation; and

   g.    the release of the Obligor, the Guarantors or any other party from the performance or observance of any of the agreements, covenants, terms or conditions contained in the Note, the Mortgage or any other document executed in connection therewith by the operation of the law.

4.    Notice of acceptance of this Guaranty Agreement and notice of any obligations or liabilities contracted or incurred by the Obligor, the Guarantors or any other party to the obligation are hereby waived by the Guarantors.

5.    This Guaranty Agreement may not be modified or amended except by a written agreement executed by the Guarantors with the consent in writing of the Secretary.

6.    This Guaranty Agreement may be assigned to any holder of the Note.

7.    All agreements, covenants, terms and conditions in this Guaranty Agreement shall inure to the benefit of the Secretary and its successors and assigns, and, without limitation of the generality of the foregoing, shall in particular inure to the benefit of any holder of the Note.

8.    The signatures of the Guarantors hereto are, (without limitation of the foregoing) in addition to and intended as and to have the effect of an endorsement of the Note by the Guarantors, who hereby waive presentment, demand of payment, protest and notice of nonpayment or dishonor, and of protest of the Note and any and all other notices and demands whatsoever.

EXHIBIT C

FF-C-030

9.     The terms of this Guaranty Agreement shall apply to the Note and shall bind the Guarantors to the same extent as though each of them executed and delivered a separate instrument of guaranty with respect to each of such instruments and annexed the same thereto.

10.     This Guaranty Agreement shall be binding upon the Guarantors and the Guarantors' heirs, executors, administrators, successors, assigns and all other legal representatives.

11.     The Guarantors acknowledge and represent to the Secretary that they are principal parties of interest with respect to the past, present and future operation of the Vessel and that the past, present and future financial success of the Vessel has, does and will directly, materially and substantially benefit the Guarantors.  Accordingly, the Guarantors acknowledge and consent to any and all regulations and/or Financial Services Division requirements which require, permit or authorize the Secretary to request that the Guarantors execute and deliver a guaranty of sums due under the Note.

12.     All provisions of this Guaranty Agreement shall be construed, given effect, and enforced according to the federal laws of the United States.  With respect to any claim or proceeding relating to this Guaranty Agreement, the Guarantors hereby consent to and subject themselves to the jurisdiction of the United States District Court for the Western District of Washington and agree that the venue of any action or proceeding relating to this Guaranty Agreement shall lie exclusively in the United States District Court for the Western District of Washington, unless the Secretary has instituted proceedings where the Vessel may be located and in such case, the Guarantors consent to and subject themselves to the jurisdiction of the federal court which maintains jurisdiction over the Vessel.

13.     If more than one party is obligated under the terms of this Guaranty Agreement, then the liabilities created hereunder shall be joint and several.

EXHIBIT C

FF-C-030

IN WITNESS WHEREOF, the undersigned have executed and delivered this Guaranty Agreement.

Date: November 25 , 2009

UNITED STATES OF AMERICA,
acting by and through the
Secretary of Commerce, National
Oceanic and Atmospheric Administration,
National Marine Fisheries Service,
Financial Services Division

By: _____
Name: SCOTT HOUGHTALING
Title: BRANCH CHIEF
Financial Services Branch
Northwest Region

GUARANTORS:

_____
John Freitas

_____
Carolyn Freitas

_____
Nazary Caboz

Page 5 of 7

EXHIBIT C

FF-C-030

STATE OF CALFORNIA )
) ss
COUNTY OF San Diego )

On November 25, 2009, before me, personally appeared **John Freitas**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this **Guaranty Agreement** and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

WITNESS my hand and official seal

SEAL _____
Notary Public



N. JUDD
Commission # 1650951
Notary Public - California
San Diego County
My Comm. Expires Mar 12, 2010

STATE OF CALFORNIA )
) ss
COUNTY OF San Diego )

On November 25, 2009, before me, personally appeared **Carolyn Freitas**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this **Guaranty Agreement** and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

WITNESS my hand and official seal

SEAL _____
Notary Public

N. JUDD
Commission # 1650951
Notary Public - California
San Diego County
My Comm. Expires Mar 12, 2010

EXHIBIT C

FF-C-030

STATE OF CALFORNIA                            )
                                              ) ss
COUNTY OF                 )

On November 25 , 2009, before me, personally appeared **Nazary Caboz**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to this **Guaranty Agreement** and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed this instrument.

WITNESS my hand and official seal

SEAL

_____
Notary Public

N. JUDD
Commission # 1650951
Notary Public - California
San Diego County
My Comm. Expires Mar 12, 2010

EXHIBIT C



UNITED STATES DEPARTMENT OF COMMERCE
National Oceanic and Atmospheric Administration
NATIONAL MARINE FISHERIES SERVICE
Financial Services Division
1315 East-West Highway
Silver Spring, Maryland 20910
(301) 427-8765
October 8, 2015

CERTIFIED MAIL - RETURN RECEIPT REQUESTED – 7002 3150 0003 7212 8663

John & Carolyn Freitas
3616 Garrison St.
Sand Diego, CA 92106

> Re:   F/V CAROL LINDA, O.N.  624971
>        NMFS No. FF-C-030

Dear John & Carolyn Freitas:

On November 25, 2009, Vasco Enterprises, Incorporated, executed a Promissory Note for $3,000,000.00 (herein, the "Note") payable to the United States of America with interest on unpaid principal computed from the date of the Note at the rate of 5.785 percent per annum. Payments were required to be made on the Note quarterly, in level debt installments beginning 3 months from the date of the Note and maturing fifteen (15) years from the date thereof.

On November 25, 2009, Vasco Enterprises, Incorporated, also executed a Preferred Ship Mortgage (herein, the "Mortgage") to the United States on the F/V CAROL LINDA, Official No. 624971 (herein, the "Vessel"), as security for the Note. Both the Note and the Mortgage were made pursuant to the Fisheries Finance Program.

As Guarantors on the above mentioned loan to Vasco Enterprise Incorporated, notice is hereby given that Vasco Enterprises, Incorporated has defaulted under the terms and provisions of the Note and Mortgage by failing to pay installments of principal and interest when due. In accordance with the terms and provisions of the Note and Mortgage, the United States hereby declares the entire outstanding indebtedness of the Note and Mortgage, including any advances, immediately due and payable.

As shown on the attached accounting, as of October 8, 2015, the outstanding indebtedness is $2,460,587.46. For each day after October 8, 2015, interest will accrue on the principal balance of $2,460,587.46 at the per diem rate of $1,213.44. Said per diem rate is calculated at the rate of eighteen percent (18%) per annum as provided in Article II, Section 2(a) and Article 1, Section 8 of the Mortgage.

Any future advances made by the United States under the Note and Mortgage in taking possession of the Vessel or in protecting the United States' rights will be added to the indebtedness currently due and bear interest at the annual rate of 18 percent.


Printed on Recycled Paper

1



Demand is hereby made for immediate payment of $2,460,587.46, together with interest at the per diem rate of $1,213.44 from October 8, 2015 through the date of payment. A check or money order for the amount due, made payable to the U. S. Department of Commerce/NOAA/NMFS may be mailed to:

> National Marine Fisheries Service
> Financial Services Division, F/MB5
> 1315 East West Highway
> Silver Spring, Maryland 20910

To assure proper credit, identify the payment by the designation FF-C-030.

If the amount demanded is not received within 10 days of the date of this letter, we will forward this case to the Department of Justice for collection. You may then expect that this Vessel will be promptly seized by a U.S. Marshal, after which it will be in the custody of a U.S. District Court pending the foreclosure sale. If the Vessel does not sell for enough to satisfy the amount then due on the Note and Mortgage, including any advances, Vasco Enterprises, Incorporated will be liable for any deficiency.

We regret the necessity of this action.

> Sincerely,
>
> Paul L. Marx
>
> Paul Marx, Chief
> Financial Services Division

Enclosure (as noted)

cc:  F/MB5 - Earl Bennett (w/encl.)
     F/MB53- Credit File (w/encl.)
     GCF – Leila Afzal (w/encl.)

EXHIBIT D

FF-C-030
Vasco Enterprises, Inc.
Closed 24 Nov 09
Amount $3,000,000.00
Interest 5.785
Accelerated Interest 18.00

| Payment Date | Amount | Principal | Interest | Late Charge | Interest Balance | Principal Balance | Total Balance |
|---|---|---|---|---|---|---|---|
| 2/24/2010 | 75,131.57 | 39,470.61 | 35,660.96 | 0.00 | 0.00 | 2,960,529.39 | 2,960,529.39 |
| 5/25/2010 | 75,131.57 | 32,901.44 | 42,230.13 | 0.00 | 0.00 | 2,927,627.95 | 2,927,627.95 |
| 8/10/2010 | 75,131.57 | 39,402.88 | 35,728.69 | 0.00 | 0.00 | 2,888,225.07 | 2,888,225.07 |
| 11/5/2010 | 75,131.57 | 35,606.11 | 39,825.46 | 0.00 | 0.00 | 2,852,918.96 | 2,852,918.96 |
| 2/23/2011 | 75,131.57 | 25,393.08 | 49,738.49 | 0.00 | 0.00 | 2,827,525.88 | 2,827,525.88 |
| 6/21/2011 | 75,131.57 | 21,250.64 | 52,880.93 | 1,000.00 | 0.00 | 2,806,275.24 | 2,806,275.24 |
| 9/27/2011 | 78,888.15 | 34,300.16 | 43,587.99 | 1,000.00 | 0.00 | 2,771,975.08 | 2,771,975.08 |
| 11/21/2011 | 75,131.57 | 50,967.92 | 24,163.65 | 0.00 | 0.00 | 2,721,007.16 | 2,721,007.16 |
| 2/8/2012 | 75,131.57 | 41,061.95 | 34,069.62 | 0.00 | 0.00 | 2,679,945.21 | 2,679,945.21 |
| 5/15/2012 | 75,131.57 | 33,930.53 | 41,201.04 | 0.00 | 0.00 | 2,646,014.68 | 2,646,014.68 |
| 8/27/2012 | 75,131.57 | 31,516.55 | 43,615.02 | 0.00 | 0.00 | 2,614,498.13 | 2,614,498.13 |
| 12/14/2012 | 75,131.57 | 28,964.24 | 45,167.43 | 1,000.00 | 0.00 | 2,585,533.89 | 2,585,533.89 |
| 3/12/2013 | 75,131.57 | 39,070.10 | 36,061.47 | 0.00 | 0.00 | 2,546,463.79 | 2,546,463.79 |
| 4/9/2013 | 375.66 | 0.00 | 375.66 | 0.00 | 10,925.06 | 2,546,463.79 | 2,557,388.85 |
| 6/28/2013 | 75,131.57 | 30,918.74 | 32,287.77 | 1,000.00 | 0.00 | 2,515,545.05 | 2,515,545.05 |
| 6/28/2013 | 3,756.58 | 3,756.58 | 0.00 | 0.00 | 0.00 | 2,511,788.47 | 2,511,788.47 |
| 9/9/2013 | 75,131.57 | 46,070.18 | 29,061.39 | 0.00 | 0.00 | 2,465,718.29 | 2,465,718.29 |
| 12/11/2013 | 75,131.57 | 37,787.22 | 36,344.35 | 1,000.00 | 0.00 | 2,427,931.07 | 2,427,931.07 |
| 12/22/2014 | 75,000.00 | 0.00 | 74,000.00 | 1,000.00 | 70,688.73 | 2,427,931.07 | 2,498,619.80 |
| 3/16/2015 | 75,131.57 | 0.00 | 3,442.84 | 1,000.00 | 28,881.24 | 2,427,931.07 | 2,456,812.31 |
| 5/18/2015 | 75,000.00 | 21,875.70 | 24,243.06 | 0.00 | 0.00 | 2,406,055.37 | 2,406,055.37 |
| 10/8/2015 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,460,587.46 | 2,460,587.46 Acceleration |



**UNITED STATES DEPARTMENT OF COMMERCE**
National Oceanic and Atmospheric Administration
NATIONAL MARINE FISHERIES SERVICE
Financial Services Division
1315 East-West Highway
Silver Spring, Maryland 20910
(301) 427-8765
October 8, 2015

CERTIFIED MAIL · RETURN RECEIPT REQUESTED · 7002 3150 0003 7212 8656

Nazary Caboz
3616 Garrison St.
Sand Diego, CA 92106

    Re:    F/V CAROL LINDA, O.N. 624971
           NMFS No. FF-C-030

Dear Nazary Caboz:

On November 25, 2009, Vasco Enterprises, Incorporated, executed a Promissory Note for $3,000,000.00 (herein, the "Note") payable to the United States of America with interest on unpaid principal computed from the date of the Note at the rate of 5.785 percent per annum. Payments were required to be made on the Note quarterly, in level debt installments beginning 3 months from the date of the Note and maturing fifteen (15) years from the date thereof.

On November 25, 2009, Vasco Enterprises, Incorporated, also executed a Preferred Ship Mortgage (herein, the "Mortgage") to the United States on the F/V CAROL LINDA, Official No. 624971 (herein, the "Vessel"), as security for the Note. Both the Note and the Mortgage were made pursuant to the Fisheries Finance Program.

As a Guarantor on the above mentioned loan, notice is hereby given that Vasco Enterprises, Incorporated has defaulted under the terms and provisions of the Note and Mortgage by failing to pay installments of principal and interest when due. In accordance with the terms and provisions of the Note and Mortgage, the United States hereby declares the entire outstanding indebtedness of the Note and Mortgage, including any advances, immediately due and payable.

As shown on the attached accounting, as of October 8, 2015, the outstanding indebtedness is $2,460,587.46. For each day after October 8, 2015, interest will accrue on the principal balance of $2,460,587.46 at the per diem rate of $1,213.44. Said per diem rate is calculated at the rate of eighteen percent (18%) per annum as provided in Article II, Section 2(a) and Article I, Section 8 of the Mortgage.

Any future advances made by the United States under the Note and Mortgage in taking possession of the Vessel or in protecting the United States' rights will be added to the indebtedness currently due and bear interest at the annual rate of 18 percent.

Demand is hereby made for immediate payment of $2,460,587.46, together with interest at the per diem rate of $1,213.44 from October 8, 2015 through the date of payment. A check or



1

EXHIBIT D

money order for the amount due, made payable to the U. S. Department of Commerce/NOAA/NMFS may be mailed to:

> National Marine Fisheries Service
> Financial Services Division, F/MB5
> 1315 East West Highway
> Silver Spring, Maryland 20910

To assure proper credit, identify the payment by the designation FF-C-030.

If the amount demanded is not received within 10 days of the date of this letter, we will forward this case to the Department of Justice for collection. You may then expect that this Vessel will be promptly seized by a U.S. Marshal, after which it will be in the custody of a U.S. District Court pending the foreclosure sale. If the Vessel does not sell for enough to satisfy the amount then due on the Note and Mortgage, including any advances, Vasco Enterprises, Incorporated will be liable for any deficiency.

We regret the necessity of this action.

> Sincerely,
>
> Paul Z Marx
>
> Paul Marx, Chief
> Financial Services Division

Enclosure (as noted)

cc:   F/MB5 - Earl Bennett (w/encl.)
      F/MB53- Credit File (w/encl.)
      GCF – Leila Afzal (w/encl.)

2

FF-C-030
Vasco Enterprises, Inc.
Closed 24 Nov 09
Amount $3,000,000.00
Interest 5.785
Accelerated Interest    18.00

| Payment Date | Amount | Principal | Interest | Late Charge | Interest Balance | Principal Balance | Total Balance |
|---|---|---|---|---|---|---|---|
| 2/24/2010 | 75,131.57 | 39,470.61 | 35,660.96 | 0.00 | 0.00 | 2,960,529.39 | 2,960,529.39 |
| 5/25/2010 | 75,131.57 | 32,901.44 | 42,230.13 | 0.00 | 0.00 | 2,927,627.95 | 2,927,627.95 |
| 8/10/2010 | 75,131.57 | 39,402.88 | 35,728.69 | 0.00 | 0.00 | 2,888,225.07 | 2,888,225.07 |
| 11/5/2010 | 75,131.57 | 35,606.11 | 39,825.46 | 0.00 | 0.00 | 2,852,918.96 | 2,852,918.96 |
| 2/23/2011 | 75,131.57 | 25,393.08 | 49,738.49 | 0.00 | 0.00 | 2,827,525.88 | 2,827,525.88 |
| 6/21/2011 | 75,131.57 | 21,250.64 | 52,880.93 | 0.00 | 0.00 | 2,806,275.24 | 2,806,275.24 |
| 9/27/2011 | 78,888.15 | 34,300.16 | 43,587.99 | 1,000.00 | 0.00 | 2,771,975.08 | 2,771,975.08 |
| 11/21/2011 | 75,131.57 | 50,967.92 | 24,163.65 | 1,000.00 | 0.00 | 2,721,007.16 | 2,721,007.16 |
| 2/8/2012 | 75,131.57 | 41,061.95 | 34,069.62 | 0.00 | 0.00 | 2,679,945.21 | 2,679,945.21 |
| 5/15/2012 | 75,131.57 | 33,930.53 | 41,201.04 | 0.00 | 0.00 | 2,646,014.68 | 2,646,014.68 |
| 8/27/2012 | 75,131.57 | 31,516.55 | 43,615.02 | 0.00 | 0.00 | 2,614,498.13 | 2,614,498.13 |
| 12/14/2012 | 75,131.57 | 28,964.24 | 45,167.43 | 1,000.00 | 0.00 | 2,585,533.89 | 2,585,533.89 |
| 3/12/2013 | 75,131.57 | 39,070.10 | 36,061.47 | 0.00 | 0.00 | 2,546,463.79 | 2,546,463.79 |
| 4/9/2013 | 375.66 | 0.00 | 375.66 | 0.00 | 10,925.06 | 2,557,388.85 | 2,557,388.85 |
| 6/28/2013 | 75,131.57 | 30,918.74 | 32,287.77 | 1,000.00 | 0.00 | 2,515,545.05 | 2,515,545.05 |
| 6/28/2013 | 3,756.58 | 3,756.58 | 0.00 | 0.00 | 0.00 | 2,511,788.47 | 2,511,788.47 |
| 9/9/2013 | 75,131.57 | 46,070.18 | 29,061.39 | 0.00 | 0.00 | 2,465,718.29 | 2,465,718.29 |
| 12/11/2013 | 75,131.57 | 37,787.22 | 36,344.35 | 1,000.00 | 0.00 | 2,427,931.07 | 2,427,931.07 |
| 12/22/2014 | 75,000.00 | 0.00 | 74,000.00 | 1,000.00 | 70,688.73 | 2,427,931.07 | 2,498,619.80 |
| 3/16/2015 | 75,131.57 | 0.00 | 3,442.84 | 1,000.00 | 28,881.24 | 2,427,931.07 | 2,456,812.31 |
| 5/18/2015 | 75,000.00 | 21,875.70 | 24,243.06 | 0.00 | 0.00 | 2,406,055.37 | 2,406,055.37 |
| 10/8/2015 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,460,587.46 | 2,460,587.46 Acceleration |

EXHIBIT D